IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

CARLOS PANTHERA,

   Plaintiff,

v.

VILLAGE OF OAK LAWN, CHIEF JAMES HOUK,
CAPTAIN VORDERER, LIEUTENANT TOM SIMON,
LIEUTENANT FRANK RAGLIONE, and BOARD OF
FIRE AND POLICE COMMISSIONERS JOHN C.
FRIEL, WILLIAM EGAN and ROBERT BANAS,

   Defendants.

01 C 3059

Judge Kennelly

## AMENDED COMPLAINT

NOW COME Plaintiff, CARLOS PANTHERA, by and through his attorneys, LOEVY & LOEVY, and in support of his Complaint against VILLAGE OF OAK LAWN, CHIEF JAMES HOUK, CAPTAIN VORDERER, LIEUTENANT TOM SIMON, LIEUTENANT FRANK RAGLIONE, and BOARD OF FIRE AND POLICE COMMISSIONERS JOHN C. FRIEL, WILLIAM EGAN, and ROBERT BANAS, states as follows:

### Introduction

1. This action is brought pursuant to 42 U.S.C. Section 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution.

### Jurisdiction and Venue

2. This Court has jurisdiction of the action pursuant to 28 U.S.C. § 1331 and § 1343.

3. Venue is proper under 28 U.S.C. § 1391(b). On information and belief, all defendants reside in this judicial district, and the events giving rise to the claims asserted herein all occurred within district.

**Background**

4. This case involves a gross abuse of authority by a Chief of Police and other powerful municipal officials, all of whom apparently perceived that they could act with total impunity in punishing a police officer for daring to speak out on matters of public concern.

5. Plaintiff, Carlos Panthera, is a thirty-three year old former resident of Oak Lawn, Illinois.

6. After completing a four-year tour of duty with the United States Navy, Plaintiff attended the Illinois State Police Academy and became a patrolman for the Village of Oak Lawn Police Department ("the Department") in 1996.

7. Plaintiff received numerous commendations, honorable mentions and other recognition for his work as a patrolman. At all times, Plaintiff exceeded his employer's legitimate expectations.

**The June 28, 2000 Service Merchandise Call**

8. On the evening of June 28, 2000 Plaintiff and Lt. Frank Raglione responded to a breaking and entering call at Service Merchandise in Oak Lawn, Illinois.

9. The two officers spent approximately forty minutes inside the building with a civilian agent of Service Merchandise, searching for any intruders.

10. During this search, Plaintiff remained concerned about the possibility that unauthorized, and possibly dangerous, individuals were present in the store.

2

11. During the search, Plaintiff became concerned with the manner in which Lt. Raglione handled himself. Specifically, Plaintiff believed that Lt. Raglione did not follow proper procedure in searching the building in that the lieutenant seemed far more interested in "flirting" with the female civilian key holder than in completing the search.

12. In this manner, Plaintiff also believed that Lt. Raglione's actions put Plaintiff, and more importantly the civilian, at risk of grave harm.

13. Wishing to report this serious act of endangering a civilian through the proper command channels, on or about June 28, 2000, Plaintiff brought his concerns to the office of Lt. Tom Simon, the acting watch commander. Plaintiff reported to Lt. Simon, among other things, Lt. Raglione's serious mishandling of the call and the danger it created for those inside the store.

14. Plaintiff also expressed concern about the length of time Lt. Raglione took in directing the search of the Service Merchandise building. Because of an unrelated home invasion that occurred in Oak Lawn at the time of the Service Merchandise call, Oak Lawn citizens faced a serious threat of harm while valuable police department manpower was being tied up in conducting the unduly delayed search of the store.

### The June 30, 2000 Meeting

15. On or about June 30, 2000, Plaintiff went into to Lt. Simon's office to discuss the status of his complaint regarding Lt. Raglione. At that time, Lt. Simon informed Plaintiff that the complaint had been investigated, and though he

3

felt some of Lt. Raglione's actions were in fact serious, the matter had already been "handled", or words to that effect.

16. During the conversation with Plaintiff, Lt. Simon then insisted that Lt. Raglione join the two of them in his office. Plaintiff objected, and even went so far as to request of Lt. Simon that he be allowed third party witnesses to observe the conversation. Lt. Simon refused this request.

17. The conversation between the three men was wholly inappropriate and unprofessional and focused on Lt. Raglione's professed concern regarding whether Plaintiff "respected [him] as a man", or words to that effect.

18. Shortly after the June 30, 2000 conversation, Plaintiff learned that none of the witnesses (including several other police officers) relating to Plaintiff's Service Merchandise complaint to Lt. Simon regarding Lt. Raglione had been contacted by Lt. Simon.

19. This was the case notwithstanding that it was standard procedure for the Department to interview all officers present for the events which lead to a complaint of this nature.

20. Sometime after Plaintiff's June 28, 2000 complaint regarding Lt. Raglione had been lodged, Lt. Raglione instituted his own complaint against Plaintiff relating to the same incident. As described below, Lt. Raglione's complaint was a substantial component of the effort to terminate Plaintiff.

### The July 7, 2000 Pepper-Spray Incident

21. Approximately ten days later, on July 7, 2000, Plaintiff was assigned to watch over Christopher Foltz, a

4

civilian who had been pepper-sprayed and arrested, as he was being booked at the Department.

22. Foltz was extremely agitated about the fact that he had been pepper-sprayed.

23. In an attempt to calm Foltz, Plaintiff inquired into the reasons for his anger. Upon hearing Foltz claim that he had been pepper-sprayed "for no reason", or words to that effect, Plaintiff informed him that if that was truly the case he had the right to file a lawsuit.

### Chief Houk's Directive

24. On or about July 10, 2000, Oak Lawn Police Chief James Houk issued a directive stating that Plaintiff was to be put on administrative leave pending an internal investigation regarding undisclosed charges (the "Charges").

25. Per that directive, Captain Terrence Vorderer left a message for Plaintiff informing him that he was under investigation and was therefore immediately placed on administrative leave. To that end, Plaintiff was told to report to Cpt. Vorderer in order to turn in his star, shield, identification cards and station keys.

26. Shortly after retrieving the message, Plaintiff contacted Pat Barron and John Flood, officials with his union, to discuss the situation. Under the circumstances, Plaintiff did not want to meet with Cpt. Vorderer without union representation.

27. The next day, on or about July 11, 2000, as requested, Plaintiff turned in his equipment to the Department. At no point during his discussions with any member of the

Department was Plaintiff ever informed that a failure to report to Cpt. Vorderer immediately was to be considered an act of insubordination.

28. On or about July 12, 2000, Plaintiff was informed by union officials that a meeting with Cpt. Vorderer would occur on July 14, 2000.

29. On July 12, 2000 and the morning of July 14, 2000 union officials attempted to discuss Panthera's status with Cpt. Vorderer, who declined to offer substantive comment on the situation.

### The July 14, 2000 Meeting

30. On July 14, 2000 Plaintiff attended a meeting with Cpt. Vorderer at which he was informed he was under investigation and would be placed on administrative leave pending its completion.

31. During the July 14, 2000 meeting, Cpt. Vorderer also informed Plaintiff that his refusal to meet earlier constituted insubordination.

32. From that point forward, Plaintiff was assigned to perform menial clerical tasks at the Department. He was assigned to a small room on the Department's second floor, and any contact between he and his fellow officers was forbidden.

33. In the Fall of 2000, Plaintiff was informed that he was being charged with violations stemming from the events of June 28, June 30, July 7 and July 14, all described above.

34. As described above, Plaintiff committed no misconduct in connection with any of the events described above.

### The Board of Fire and Police Commission Proceedings

35. In February of 2001 Plaintiff was found guilty by the Board of Fire and Police Commissioners of the Village of Oak Lawn, Illinois ("the Board") of violating Department policies.

36. A mitigation hearing was conducted before the Board in February of 2001. At that hearing numerous fellow Department members testified on Plaintiff's behalf, both as a person and as a patrolman.

37. On March 26, 2001, at Chief Houk's request, the Board made the decision, incorporating its prior, non-final decision of February 8, 2001, to remove Plaintiff from his former position as a patrolman and as a member of the Department (collectively, "the Decision").

38. Plaintiff's termination was unlawful, unsupported by evidence, and plainly retaliatory, giving rise to the following legal causes of action.

### Count I -- 42 U.S.C. 1983:

### First Amendment

39. Plaintiff realleges each of paragraphs 1-38 as if fully stated herein.

40. The First Amendment to the United States Constitution guarantees Plaintiff's rights to speak out on matters of public concern without unjust retaliation.

41. Prior to his unlawful termination, and as a direct cause thereof, Plaintiff engaged in protected speech on matters of public concern.

7

42. In retaliation for their exercise of protected speech, Defendants retaliated against Plaintiff in the manner described in the preceding paragraphs.

43. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

44. The misconduct described in this Complaint was undertaken pursuant to the policy and practice of the Department in that:

    a. As a matter of both policy and practice, the Department directly encourages, and is thereby the moving force behind, the very type of misconduct at issue here by failing to adequately train, supervise and control its officers, such that its failure to do so manifests deliberate indifference; and

    b. As a matter of both policy and practice, the Department facilitates the very type of misconduct at issue here by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading officers to believe their actions will never be scrutinized and, in that way, directly encouraging future abuses such as those affecting Plaintiff; and

    c. Municipal policymakers with final policy-making authority were either the moving force behind the complained-of actions, or else affirmatively ratified the same.

WHEREFORE, Plaintiff, CARLOS PANTHERA respectfully requests that the Court enter judgment in his favor and against VILLAGE OF OAK LAWN, JAMES HOUK, CAPTAIN VORDERER, LIEUTENANT TOM SIMON and LIEUTENANT FRANK RAGLIONE, awarding compensatory

damages and attorneys' fees, along with punitive damages against the individual Defendants in their individual capacities, and any other relief this Court deems just and appropriate.

### Count II -- 42 U.S.C. 1983:
### Equal Protection

45. Plaintiff realleges each of paragraphs 1-44 as if fully stated herein.

46. Plaintiff has been victimized irrationally by powerful municipal actors based on his membership in a certain class of individuals.

47. Members of Plaintiff's class were treated differently than other similarly-situated individuals.

48. The differential treatment of Plaintiff, described in the preceding paragraphs was intentional and arbitrary, motivated by nefarious and discriminatory purpose, and was not rationally related to any governmental interest.

49. The misconduct described in this Complaint was undertaken pursuant to the policy and practice of the Department in the manner described above.

50. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

51. As a result of the above-described wrongful conduct, Plaintiff has suffered financial and other damages, including but not limited to, mental stress and anguish.

52. The misconduct described in this Complaint was undertaken pursuant to the policy and practice of the Department in the manner described above.

WHEREFORE, Plaintiff, CARLOS PANTHERA respectfully requests that the Court enter judgment in his favor and against VILLAGE OF OAK LAWN, JAMES HOUK, CAPTAIN VORDERER, LIEUTENANT TOM SIMON and LIEUTENANT FRANK RAGLIONE, awarding compensatory damages and attorneys' fees, along with punitive damages against the individual Defendants in their individual capacities, and any other relief this Court deems just and appropriate.

### Count III -- Supplemental State Claim:
### Illinois Administrative Review Law, 5/3-101 et seq.

53. Plaintiff realleges each of paragraphs 1-52 as if fully stated herein.

54. The Board's Decision adversely affects Plaintiff's legal rights in that, *inter alia*, it resulted his termination from employment. The Decision also has the negative effect of chilling Plaintiff's Free Speech, and interfering with his rights of association, as well as affecting his personal reputation negatively.

55. The Board's hearing was held in Cook County, Illinois.

56. Judicial review of the Decision and the proceedings which culminated therein is sought because the decision is erroneous and contrary to law.

57. Among other reasons, the Decision is contrary to the manifest weight of the evidence in myriad respects including, but not limited to, the following:

    (a) The evidence and testimony at the Hearing establish unequivocally that Plaintiff committed no offense warranting termination;

    (b) The evidence and testimony at the Hearing establish unequivocally that Plaintiff violated no directives or Department rules, oral or written;

    (c) Termination is clearly excessive based on the evidentiary record;

    (d) Termination as a penalty amounts to selective enforcement of the Department's rules, in that other members of the Department have committed other more serious wrongdoing without termination.

    (e) Termination, rather than being legitimate discipline, amounts to unconstitutional retaliation including, *inter alia*, chilling free speech.

58. The termination penalty and the Charges themselves were also blatantly pretextual attempts by Chief Houk to retaliate against Plaintiff based on his efforts to exercise his First Amendment rights, and were thereby invalid *per se*.

59. Further, certain evidentiary rulings made by the Board against Plaintiff were contrary to well-established evidentiary law and significantly impaired Plaintiff's ability to present his case.

11

60. Plaintiff specifies that the entire transcript of the hearings, including exhibits, be furnished as part of the record as part of the Defendants' Answer. Also to be filed is the entire pre-hearing record, including but not limited to all motions, responses, and Orders.

WHEREFORE, Plaintiff, CARLOS PANTHERA, respectfully requests that this Court:

A. Review the appeal of Plaintiff's termination and the record of the proceedings culminating therein;

B. Reverse and set aside Plaintiff's termination, awarding him back pay and other equitable compensation;

C. Grant such further relief which this Court deems lawful and proper.

## JURY DEMAND

Plaintiff, CARLOS PANTHERA, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.


RESPECTFULLY SUBMITTED,

_____
Attorneys for Plaintiff

Arthur Loevy
Jon Loevy
Danielle Loevy
Jon Rosenblatt
LOEVY & LOEVY
434 West Ontario
Suite 400
Chicago, IL 60610
(312) 274-17001

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

CARLOS PANTHERA,

    Plaintiff,

    v.

VILLAGE OF OAK LAWN, CHIEF JAMES HOUK,
CAPTAIN VORDERER, LIEUTENANT TOM SIMON,
LIEUTENANT FRANK RAGLIONE, and BOARD OF
FIRE AND POLICE COMMISSIONERS JOHN C.
FRIEL, WILLIAM EGAN and ROBERT BANAS,

    Defendants.

01 C 3059

Judge Kennelly

## NOTICE OF FILING

TO:

Michael J. Duggan
Kathleen T. Henn
Klein, Thorpe & Jenkins, Ltd.
20 North Wacker Dr., Ste. 1600
Chicago, IL 60606

    Please take notice that on June 26, 2001, I filed the attached PLAINTIFF'S AMENDED COMPLAINT at the United States Courthouse, 219 South Dearborn, Chicago, IL.

                                                                               Attorneys for Plaintiff

Loevy & Loevy
434 West Ontario, Ste. 400
Chicago, IL 60610
(312) 274-1700

## CERTIFICATE OF SERVICE

    I, Jon Rosenblatt, an attorney, certify that on June 25, 2001, I sent by facsimile a copy of the attached PLAINTIFF'S AMENDED COMPLAINT to the above-named parties.